OPINION OF THE COURT
Leo F. Hayes, J.
The sole issue before this court is whether defendant, Con *718 solidated Rail Corporation, may be held liable as an owner within the meaning of Labor Law § 240. By stipulation of counsel the action was bifurcated, and the issue of liability was tried by the court. After trial, the court made the following findings:
(1) Defendant, Conrail, was the owner of a right-of-way that generally ran east and west through an area in the City of Syracuse, that at one time was used as a rail line in the conduct of its railroad business. The area of the right-of-way involved in this proceeding was that portion of the right-of-way lying just south and east of the easterly boundary line of Bear Street, a public thoroughfare, and more particularly, circled in red ink by counsel on a survey map dated March 19, 1987.
(2) Martisco Plumbing Corporation (a nonparty), some 30 years ago, purchased property to the south of the Conrail right-of-way, running along the easterly line of Bear Street to the corner of Pulaski Street. The property at that time was then enclosed by a 10-foot woven fence with a barbed wire attachment at the top, that bounded the Martisco Plumbing Corporation’s yard that was used for the storage of piping and other plumbing supplies. The fence ran generally in a southeasterly direction, along a line that was thought to be the southerly boundary line of the Conrail property and the northerly boundary of the Martisco property.
(3) C.O. Falter Construction Company, at some time prior to June 5, 1987, purchased the property north of the Conrail right-of-way.
(4) At some time during the 1960’s, Martisco and Penn Advertising Company, the predecessor of Richards "Of Course”, entered into an agreement whereby Penn Advertising erected a billboard south of the afore-described fence on what was thought to be the Martisco property. The leasing arrangement called for the erection and maintenance of the billboard, and was renewed between Penn and then Richards "Of Course” and Martisco every three years, up to and including June 5, 1987. The court has received in evidence a copy of a three-year lease commencing December 26, 1984 between Penn Advertising and Martisco that called for the payment of annual rent, and the responsibility of Penn for maintaining the billboard and clearing brush and other debris from beneath the sign.
(5) That from the date of the erection of the billboard up to *719 and including June 5, 1987, Penn Advertising and their successor in interest, Richards "Of Course”, continued to pay rent to Martisco and maintained and serviced the billboard in question pursuant to the terms of the lease.
(6) Some time in early 1987, and more particularly, February of 1987, Mr. Charles Falter, president of C.O. Falter Construction Company, began negotiating with Conrail for the purchase of the right-of-way between the Martisco property and the Falter property. As part of the negotiations, Mr. Falter had been provided with a valuation map of the Conrail right-of-way that did not disclose the presence of the Martisco fence and the billboard on the Conrail right-of-way. As part of the negotiating process with Conrail, Falter was to provide a survey that was eventually prepared on March 19, 1987.
(7) Mr. Robert Crafty, the property manager of Conrail, who was in charge of the vast Conrail properties in Connecticut, Massachusetts and part of New York, was the party who negotiated with Falter relative to Falter’s interest in the Conrail right-of-way in 1987. There is no evidence that Mr. Crafty or anyone on behalf of Conrail had any information relative to the fence and billboard encroachment upon the Conrail right-of-way, prior to the preparation of the survey on March 19, 1987. The survey was forwarded by Mr. Crafty to the Pennsylvania offices of Conrail in preparation of the transfer of the realty.
(8) There is no evidence that Conrail acquiesced in or consented to the placement or continuance of the billboard on the Conrail property.
(9) There is no evidence that Conrail received any benefit, financial or otherwise, from the placement of the billboard on the Conrail right-of-way.
(10) That on June 5, 1987, the plaintiff, David Anthony, while an employee of and while in the conduct of business for Richards "Of Course” was injured when he fell from the billboard in question.
Labor Law § 240 (1) was amended in 1969 to substitute "[a]ll contractors and owners” for "[a] person employing or directing another to perform labor of any kind” (L 1969, ch 1108, § 1). At the time of this amendment to the Labor Law, it was noted that:
"[t]his bill places ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor * * *
*720 "The owner and general contractor have the prime contract and interest in completing the work. They choose the subcontractors and coordinate the work and, in addition, have overall supervision of all the work. They are primarily responsible for the erection of the building.” (Mem of Sen Calandra and Assemblyman Amann, 1969 NY Legis Ann, at 407.)
This court is satisfied that Consolidated Rail Corporation is not an "owner” of this property within the intended meaning of Labor Law § 240. The Appellate Division, Third Department, was faced with a somewhat similar situation in Mangiameli v Galante (171 AD2d 162 [3d Dept 1991]). In Mangiameli the plaintiff was performing repair work on a residential unit in a housing development. Plaintiff had leaned the ladder against a unit owned by an individual homeowner. The feet of the ladder were placed on land owned by the Hidden Ridge Homeowner’s Association. Plaintiff’s injury apparently occurred when he fell because the ladder slipped when the ground beneath the ladder gave way. The Appellate Division stated that "[h]ere, although the Association owned the land upon which plaintiff elected to place the legs of the ladder, it did not own the property upon which plaintiff was to perform his work. Nor is there any allegation that the Association had either the authority to contract with plaintiff’s employer to perform the work or the right to control the work. Because the Association had no ownership interest in the property upon which plaintiff was to perform his work and did not otherwise act in the capacity of an owner, it is not an owner within the meaning of Labor Law §§ 240 and 241.” (Mangiameli v Galante, supra, at 164.)*
*721 In the case at hand, it is undisputed that Consolidated Rail Corporation derived no benefit whatsoever from the presence of the billboard upon its property. It was the mistaken assumption of all parties that the property was owned by Martisco, and it was Martisco who collected rents on the property. The property was within the fenced storage area of the Martisco Corporation and was not the subject of any control or supervision by Conrail Corporation. There is no nexus whatsoever between Conrail and the billboard from which the plaintiff fell.
In this regard, the court finds noteworthy Dodge v West Harlem Pork Ctr. (630 F Supp 1296 [SD NY 1986]). In this case defendant Gress Realty Corporation leased roof space on its building to plaintiff’s employer, an outdoor advertising company. Plaintiff was injured when he fell off the sign structure which had been erected on the building rooftop. While the District Court found that Labor Law § 240 has been broadly interpreted to include lessors, it noted that:
"The term has never been interpreted so broadly, however, as to include one who has no titled, possessory or beneficial interest in a structure. Under the lease agreement Allied had complete ownership of the sign structure and was obliged to remove it from Gress’ building at the end of the lease term * * * Gress had no ownership interest in the sign, and such an interest does not arise vicariously simply because the structure was attached to Gress’ property. Indeed, it is well settled that a lessor has no ownership interest in equipment attached to the leased premises by a lessee who intends to remove it upon termination of the lease * * *
"Here the relevant 'structure’ is the billboard, not the roof of the building. No repairs were being done on the roof. Plaintiff was working on the billboard, not on the roof itself. Allied was the sole owner of the sign structure from which the plaintiff fell. Gress was not an 'owner’ of the sign as that term is used in § 240(1).” (Dodge v West Harlem Pork Ctr., supra, at 1297-1298.)
The case at hand is far more compelling than the scenario in Dodge v West Harlem Pork Ctr. (supra). Here, Conrail is not a lessor and, for all practical purposes, was unaware of the sign’s presence upon its property.
Plaintiff’s reliance upon the Court of Appeals decision in Gordon v Eastern Ry. Supply (82 NY2d 555 [1993]) is, in this court’s opinion, misplaced. The plaintiff in Gordon was injured *722 when he fell from a ladder leaning against the side of a railroad car which he was cleaning. The Court of Appeals determined that the defendant, Eastern, was an owner within the meaning of Labor Law § 240. Eastern owned the "sand-house” in which the cleaning was performed and the property upon which the "sandhouse” was situated. Eastern had leased the real property to a wholly owned subsidiary. The Court of Appeals found that:
"Liability rests upon the fact of ownership and whether Eastern had contracted for the work or benefitted from it are legally irrelevant.
"Similarly unpersuasive is Eastern’s claim that it was not the 'owner’ of the 'structure’, i.e., the railroad car, it cannot be held liable. The property was let to Ebenezer to be used for cleaning and repairing railroad cars. The very presence of the structure on its property was the direct result of Eastern’s actions and established a sufficient nexus for liability to attach to it as an 'owner’.
"Given the legislative history of section 240 and our affirmance in Celestine, we hold that when the Legislature imposed the duties of section 240 (1) on '[a]ll * * * owners’ it intended to include owners in fee even though the property might be leased to another.” (Gordon v Eastern Ry. Supply, at 560 [citations omitted].)
Despite the seemingly absolute nature of the language used by the Court of Appeals, it is clear that the Court of Appeals, nevertheless, found liability only in a situation in which there was a nexus between ownership and the incident in issue. As the Court noted, the presence of the structure was a direct result of Eastern’s actions. This court is in accord with the notion that an owner-lessor may remain liable regardless of whether or not he exercises supervision or control at a work-site. However, in the case at hand, Richards "Of Course” is far more analogous to a trespasser (albeit an unwitting one) than a lessee.
Under the unique facts of this case, it is this court’s determination that defendant, Consolidated Rail Corporation, is not an "owner” within the meaning of the Labor Law, and, therefore, such claims against the defendant are dismissed.

 This court is mindful, however, of the determination of the Appellate Division, Fourth Department, in Kerr v Rochester Gas & Elec. Corp. (113 AD2d 412 [4th Dept 1985]). In Kerr, defendant Rochester Gas & Electric had leased land to the County of Monroe for construction of a processing plant for the production of fuel which would then be sold back to defendant Rochester Gas and Electric. The plaintiff, an employee of the general contractor, was injured during the construction. The Fourth Department found Rochester Gas and Electric to be an "owner” under the meaning of the Labor Law. It noted that "[i]t may well have been the intention of the Legislature to impose the unconditional obligation upon the owner of the fee as a party likely to have the financial responsibility to respond to a judgment in favor of the injured worker”. (Kerr v Rochester Gas & Elec. Corp., supra, at 416.) However, the Fourth Department also stated that "it is within the control of the fee owner, when he conveys a lease hold or other partial interest in the property, to select responsible grantees and to impose conditions in the conveyance concerning construction upon the premises”. (Kerr v Rochester Gas & Elec. Corp., supra, at 416.)